Spring Term *1839.*

*Grundy's Administrators*
vs
*Simpson's Heirs.*

---

CHANCERY. Grundy's Administrators *against* Simpson's Heirs.

[Mr. McHenry for plaintiffs: no appearance for defendants.]

FROM THE CIRCUIT COURT FOR MARION COUNTY.

*April 27.*    Judge EWING delivered the Opinion of the Court.

An adm'r having died, the commissioners of the county ct. settled his accounts, as adm'r, with his administrators; & reported a certain sum in their hands. And they afterwards made payments to the husband of one of the distributees and the guardians of others, & obtained their receipts for specified sums—paid *in full.* INTEREST was properly allowed; so also, was the two hundred and fifty dollars allowed in the settlement as interest on notes and bonds for slave hire. And the allegation in the cross bill, as to the overpayment to Thomas Simpson, is not sufficiently specific to authorize a decree over against him, by taking the cross bill for confessed. No overpayment is charged; nor any grounds laid for the decree over, except that which

Five years afterwards, the distributees filed a bill in chancery against the administrators, praying a decree for distribution, without noticing the former settlements and receipts in full. The administrators answered, relying upon the receipts, and—alleging that they had paid more than was due—they make their answer a cross-bill, and ask a decree for restitution. It appears that the aggregate of the sums specified in the receipts, was something less than the balance reported upon the county court settlement, and the circuit court rendered a decree for the difference, with a larger sum for interest,—disregarding the terms *"in full,"* in the receipts—although no mistake or fraud in the settlements or receipts, was charged. And that decree is approved and affirmed here.

The receipts *in full,* it seems, are not so conclusive upon the distributees, as they would have been if they themselves (instead of their guardians) had made the settlements.

The allegations of over-payments, in the cross-bill, are not sufficiently specific, to authorize them to be taken as confessed; and as the cross-bill is not expressly dismissed, by the decree rendered, and may be still pending (it is said,) this court will not disturb the decree on the original bill, because of the omission to decree upon the cross-bill.

rested upon the mistake in allowing interest on bonds and notes for slave hire, which is not sustained.

To allow a decree over, *against* him without any specific allegation turning his attention to an overpayment to him on other grounds, might lead to surprise and do injustice. Besides, though the bill of Thomas Simpson has been dismissed, the cross bill has not been dismissed, or otherwise disposed of. It may yet be depending, for aught this Court can know. Be that as it may—the dismissal of the original bill is not necessarily a disposition of the cross bill as to him; and it may yet be disposed of properly. At least, this Court cannot reverse for a failure to make a decree upon the cross bill, but only for error in the decree when made.

Decree affirmed.


PETITION FOR A RE-HEARING.

[By Mr. McHenry.]

May 2.

FOR the first time since I commenced practice in this Court, I yield to a conviction that it is my duty to my clients, to present a petition for a re-hearing. I need not stop to prelude my argument with any protestations of great deference for this Court, and diffidence in calling their judgment in question. I trust there is no need for me to say, that I hold the adjudications of this Court in all due regard, and hope the Court will esteem it as an evidence of my full confidence in the good sense and sound judgment of its members, that I shall attempt to show them wherein, it seems to me, important facts have escaped their notice, in consequence of which the justice of the case has not been reached.

Robert Grundy was the administrator of James Simpson, and guardian to his heirs. When he was appointed, does not appear; but he died previous to June, 1822; for at that time James McMurry was appointed guardian to three of the heirs, on a suggestion of the death of Grundy; and Abram Sally, who had married one, was appointed guardian for another.

In February, 1823, a settlement of the accounts of

Grundy, as guardian, was made by County Court com-
missioners—showing a balance then against his admin-
istrators, of twenty seven hundred and twenty one dol-
lars forty three cents.   This included negro hire, from
1813 to 1822, and also a charge of two hundred and
fifty dollars, for interest on bonds for the hire of ne-
groes.   As there were six distributees, each one's share
would be four hundred and fifty three dollars fifty seven
cents.   On the 27th of September, 1823, William Rut-
ter and Joseph Grundy, administrators of Robert Grun-
dy, the former guardian, paid to Abram Sally, for him-
self and as guardian to one of the other children, eight
hundred and forty seven dollars twenty six cents—for
which he gave a receipt stating the sum, and adding
these words—"of my wife's and Betsey Simpson's es-
tate, which is in full."

This settlement was made with Abram Sally, who
was of full age, and was acting as guardian to Betsey
Simpson.   It was made only seven months and a half
after the County Court commissioners had ascertained
the balance due, and the administrators paid him within
eight dollars seventy six cents of that balance on each
share, if a commission of five per cent. be allowed, and
no interest be charged.   Thus, the amount paid on each
share, was $423 63; add 5 per cent, $21 18, makes
$444 81—difference $8 76.   And the receipt given at
the time, by a man competent to act for himself, states
as I have before shown, that this amount is "in full."
The matter rested thus for about five years, when all
the heirs filed a bill for a settlement, and prayed a de-
cree for what was due them, without noticing the set-
tlements which had been made.   On a final hearing, the
Circuit Court gave a decree based on a calculation
which charged the administrators with fifteen dollars
interest from 12th February, 1823, till 27th September,
1823—showing that, by that estimate, the amount paid
Sally on each share was minus the amount due on the
latter day $23 75; and giving a decree for the differ-
ence, with interest till paid, amounting to $43 44.   I
am sure that when this Court affirmed that decree, it
must have escaped the attention of this Court, that

Spring Term
1839.

*Grundy's Ad-
ministrators*
vs
*Simpson's Heirs.*

Sally had acknowledged the amount received to be *in full,* and that in his bill for a further amount, he does not intimate a charge of fraud, or an allegation of mistake in the settlement made between him and Grundy's administrators. It does not follow that because the receipt bears date the 27th of September, the money was not paid sooner. Nor does it follow, because a certain amount is named in that receipt, nothing had been paid before. The sum stated in the receipt, ("eight hundred and forty seven dollars and forty six cents,") shows of itself that a net calculation must have been made at the time, from data which the parties had in their possession, and on which they agreed. They may have paid him something before. They may have made other disbursements after the date of the County Court settlement, of which he was apprised, and which they were bound to make. To cover all that had passed, be it what it might, after a net calculation, he acknowledges that the amount then received is in full. I ask, now, in all justice and reason, whether, when that amount is within a trifling sum of what was originally due, and when he rested on it, satisfied, for five years, he ought not to be held to an *allegation,* at least, of fraud or mistake, before the Court would disregard the settlement, and give a decree in his favor? Is it to be henceforth the law of this land, that a man who has gone into a fair settlement and close calculation to a half cent, and has given a receipt "*in full,*" may, five years afterwards, file his bill for a new settlement, and call his adversary to a new account, without even alluding to the settlement which has been made—much less alleging or proving any fraud or mistake in it? I ask—is this the law? It is more important to me, and to the country, to know what the law is, than that it should be *thus* or *so.*

On the 20th of October, 1827, James McMurry, guardian for three of the heirs, had a settlement with those administrators, in which, from the calculations made, the amount due them was estimated to be fourteen hundred and seventy nine dollars, and he gave his receipt for that sum "*in full* of what Robert Grundy's estate was owing said McMurry, as being guardian for

Spring Term
1839.

Grundy's Administrators
vs
Simpson's Heirs.

three of the heirs of James Simpson." These three heirs are also complainants in this cause—praying for a settlement and decree, without taking any notice of the settlements which have been made, and without charging fraud or mistake. The Circuit Court gave them also relief, in a decree based on a calculation charging interest on the whole balance, from 12th February, 1823, till the date of the receipt, and then interest on the remainder, till decree, amounting to one hundred dollars sixty two and a half cents each. I must insist, in the case of these three heirs, as in that of the other two, that the amount paid ($1479,) shows clearly that, the parties made a net calculation from data which were before them; and the terms of the receipt, expressly stating that the amount paid was in full, show that the data were satisfactory to McMurry. The complainants allege no mistake; the amount paid is $118 29 more than the principal sum due, and of course includes some interest. If the parties calculated interest at all, they doubtless included all that had accrued; and when it is recollected that, from time to time, McMurry must have needed advancements for his wards, and in all probability must have drawn something before, the receipt is at least *prima facie* evidence of a full settlement and payment of all that remained due.

Again: permit me to suggest that it is within the judicial knowledge of the Court, that the customary currency of the country was then greatly depreciated. It may be that, in making the County Court settlement, in 1823, a considerable amount of Commonwealth's paper was included at par; which is indeed highly probable. It would not do to charge the nominal amount of this and interest on it. And McMurry might prefer, in giving his receipt for what came to his hands, to charge himself with *dollars,* not bank notes. I only allude to these things to show that something else may have been taken into the estimate, in settling with McMurry, beside the mere amount of balance due on County Court settlement with interest on it. Indeed, the papers themselves show, that some other matters were taken into the account; and as the receipt is *in full* of what

Robert Grundy's estate *was* owing, it threw the complainants upon showing fraud or mistake. I know that a receipt may be explained, or even contradicted; but I have always understood that a written acknowledgment of settlement and payment *in full*, amounted to something more than a mere receipt for so much in part of a sum due.

I do confidently believe, that some of the prominent facts suggested above, as they were not noticed in my brief, so they must have escaped the notice of the Court; and that, when the Court shall have fully considered them, the decree cannot be affirmed.

To Thomas Simpson, the sixth heir, the administrators paid, on the 16th of October, 1827, the sum of seven hundred and ninety nine dollars—being three hundred and forty five dollars forty three cents more than the principal sum due him, and if interest were allowed, it was still more than two hundred dollars over his share; and yet he files his bill with the rest for a share. In the original answer, all these receipts are exhibited, and it is expressly alleged that the sums were paid. In the amended answer, the administrators pray, "for the purpose of settling the whole matter agreeable to law and equity, for a decree over against the complainants, for whatever it may appear they have overpaid them, or either of them." And yet we are refused a decree over against Thomas Simpson. The Circuit Judge refused it on the mistaken idea that process was necessary on the cross bill; but this Court, unwilling to sanction that absurdity, justifies it on the ground that the cross bill is yet pending. See the record—15th of November, 1837, " came the parties, and the *cause* is submitted to the Court for a decree." What was the cause? It was the whole cause: the prayer on the part of the complainants for a settlement of accounts and a decree, together with the defendants' response, that they had overpaid, and a cross prayer for a settlement of accounts, and a decree. So the Court below evidently regarded it, from the terms used in the final decree; and the dismissal of Simpson's bill, without saying farther, was a refusal of the defendants' prayer for a decree

Spring Term
1839.

*Grundy's Ad-
ministrators*
vs
*Simpson's Heirs.*

over. If I am wrong in this view of the chancery practice, there are thousands of cross bills in chancery in this State, which have been sleeping for years, and which may yet be roused from their stillness, and pressed on to final decree, to the utter astonishment of parties and counsel. What would Thomas Simpson think now, of the justice of Kentucky, and the safety of her legal forms, if after contending against that cross bill five years, he finally succeeded, as he thought, and as the Judge, and his counsel, and even the record told him; and yet, when he had moved from the State, it was resuscitated and made the basis of a decree against him, for several hundred dollars?

The Court is with great deference requested to review the case; and I again assure the Court I make this request in no captious spirit, but in confidence that the plaintiffs in error will in due time get justice.

*M. D. McHenry,*
*for Grundy's Administrators.*

### RESPONSE TO THE PETITION.

[By Judge Ewing.]

*May 6.*

IN response to the petition, we would remark, that the record of settlement with the County Court showed the amount in dollars, which was due from Robert Grundy, as the guardian of the complainants. The payments were made by the defendants, his administrators, and they must have known, if any deduction was made on account of Commonwealth's paper, or on account of an allowance for commission, or on any other account; or whether the payments were made, in part or in whole, before the receipts bear date; yet they set up the receipts as evidence of the *amounts* paid, without any intimation or suggestion, that any more was paid, or that any agreed deduction was made, for or on account of any of the supposed grounds suggested by their counsel. If they paid less than the amount justly due, the balance is yet due; and they surely cannot claim a credit for more than they themselves admit that they have

paid. The record of the County Court shows what was due, and the receipts show what was paid, and the insertion of the words, "in full" cannot increase or diminish the amount, or authorize the Court to indulge in conjectures, as to the existence of facts not charged or proven by the defendants, that will carry these words beyond the amount specified, in the body of the receipts, as having been paid. It is evident to the Court that those words were intended only to express that the amount paid was the amount, and only amount, due, when the record of the County Court shows that a larger sum was due and owing.

Besides: the payments were made to guardians of infants, as to all except Sally himself. They were not privy to the receipts, and could not be presumed to know in what form they were written. They could not recover from their subsequent guardians more than came to their hands, and according to the reasoning of the counsel, must lose the balance, upon the technical ground that they did not charge "a mistake" in the receipt, which had been made erroneously to read "in full," when the error is made apparent by the record, and stands unexplained by the defendants, in whose possession the receipts were.

The heirs sued for a balance due them; a balance was found to be due them; and it was proper to give them a decree for the amount.

Besides: no rests were made against the guardian in the settlement before the County Court, and after having a liberal allowance made him for services in that settlement, the amount of five per cent. for merely paying out the money to the heirs, allowed by the Circuit Court, was as much or more than was deserving, and the defendants below have no just ground to complain.

We are still satisfied with the opinion delivered, in relation to the decree over against Thomas Simpson.

The petition for a re-hearing is overruled.